Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th circuit is now open according to law. God save the United States in this honorable court. Good morning, counsel. We very much appreciate your cooperation in having our argument today by Zoom. Turns out to have been wiser than we thought at the time when we scheduled the argument, but given the conditions. I know that y'all are experienced advocates and you're familiar with our timing system. You should be able to see the time that you have on your screens. Yes, and you know when it turns yellow, you have two minutes left. And then when it's red, we ask you to conclude your remarks. If we experience any technical difficulties during our session this morning, just please raise your hand or let us know in some way and we'll take care of it and rest assured that we'll make sure you get all of your time that's remaining. So we will begin with counsel for Mr. Freeman. You may begin. I see that you've reserved five minutes for rebuttal and you may begin when you're ready. Thank you. Good morning, your honors. May it please the court. My name is Robin Conrad and I have the privilege of representing the appellant David Freeman. At Mr. Freeman's capital murder trial, his defense counsel in their opening statement assured the jury that it would hear evidence that Mr. Freeman was physically and sexually abused as a little boy. Not only did they fail to present evidence supporting this statement, but the single witness they called during the penalty phase was in fact one of Mr. Freeman's sexual abusers. In his substantive telephonic testimony was only two sentences and he told the trial counsel's only other action in the penalty phase was the reintroduction of almost 2,000 pages of Mr. Freeman's records introduced initially at the guilt phase wholesale in support of the doomed insanity defense. While those records contained the raw materials of a powerful mitigating story, as well as numerous red flags signaling there was more to learn through investigation, trial counsel did nothing to follow those leads and offer the jurors nothing with to interpret or understand the mountain of documents they had been handed. Let me make sure I understand what we're deciding in this appeal. The district court denied your request for an evidentiary hearing and I don't see in your brief where you argued that that was an abuse of discretion. Do you agree with that? Your honor, the briefing here on appeal is a little bit murky because the way the COA was granted made it seem as though only the merits of this underlying claim were at issue. We do believe that the district court erred in its procedural ruling and erred in being allowing us to have an evidentiary hearing to prove the facts that we alleged in the district court below. Do you agree that that wasn't argued in the briefing? I do agree that that particular statement about the evidentiary hearing was not in the brief. However, as I mentioned, the COA that was granted in this case was simply whether trial counsel failed to provide effective assistance of counsel during the penalty phase. In our motion for COA, we had addressed procedural issues that we contended were incorrect that happened below. Because the COA was worded the way it was, it was our understanding that the courts would be deciding just whether this claim has merit. We contend that of course this claim has merit and so the district court erred for failing to find that it had merit. And this court should find that this claim has merit and should send it back so that the district court can in fact decide the issue under the proper legal procedures and applying the appropriate law. When you filed your papers with the district court, you did not include any affidavits or anything that was verified with regards to the allegations or the factual allegations you made regarding sexual abuse, correct? There were no affidavits, but Your Honor, we were at the pleading stage. And so we were at the point where under the habeas rules, under Townsend versus Sane, a Supreme Court decision that is still valid today, we were required to put forth detailed factual allegations supporting our claim. And that's what we did. Do you agree that those before the district court at that moment, at that time, it had not been exhausted before the state court? Yes, we have not contended that those facts were developed in state court. And as we explained in detail in our briefing below, we had a reason for that, including that the state court would not allow Mr. Freeman to have the funding and investigative resources necessary to develop those facts. Can you tell me how these claims that are not procedurally defaulted? How they are not? Yes. Well, Your Honor, we actually, and I'm glad that you brought that up. That was what we briefed below. The state argued that the claim was procedurally defaulted below. We briefed procedural default below. And so when we got to years after all of our briefing was conducted, what it considered a de novo review, which we can test that it was in fact de novo review, that that that was an error, because it hadn't first resolved the procedural issue. So what it should have done was determine whether we had shown cause, which was fully briefed. And this and Your Honor, this is a complicated habeas case, because the law has changed substantively since Mr. Freeman filed his habeas proceedings, and since the the state briefed on procedural issues. So we were in this initial stages of this habeas case, where our expectation was that we would complete briefing on the procedural issues, and then move to whether we would get an evidentiary hearing and allow for factual the district court at the time that we entered habeas in 2006 had said, we had pre trial conferences with the magistrate judge, where we went through all of those, all of those proceedings. And so when we were waiting for a procedural ruling to see if we would be able to move forward on the merits, when the district court came out with this decision saying that the claim was which is a vehicle that was inappropriate at this point and stage of the proceedings. Now, the district court's opinion was in error for multiple reasons. The district court completely mischaracterized Mr. Freeman's claim and discounted his allegations and ways that the the district court found that Mr. Freeman's counsel presented an extensive mitigation evidence through the testimony of Dr. Renfro, Dr. Burkhardt and Miss Copeland and through voluminous records. And so that that was a fact that the district court found. However, Mr. Freeman's counsel, first of all, did not put on Dr. Renfro at all. That was the state's repeatedly talks about Dr. Renfro being put on in defense by defense in support of mitigation. Secondly, the the argument and the claim that was raised below and that Mr. Freeman has, has has started to raise in state court and then developed procedural developed of the facts and federal court is that trial counsel failed to investigate, develop and present evidence of Mr. Freeman's background in a way that the jury could give it mitigating effect. And so the argument was and continues to be that trial counsel pursued an insanity defense, which trial counsel knew it could not prove. There were four different experts that said Mr. Freeman was not insane at the time of the at the time of the crime. So they ignored that and instead put on a witness, Dr. Burkhardt, who was completely torn apart during cross examination. Mr. Burkhardt, I'm sorry, Dr. Burkhardt said on cross examination that he wasn't even sure that that Mr. Freeman was insane at the time of the crime. And the state was able to bring out a bunch of negative facts from the record. The state did a better job using those records that defense counsel put in into evidence than Mr. Freeman's trial counsel. Isn't that isn't that a risk that has been raised with respect to the some of the new purportedly new evidence that you've outlined that presenting that evidence in a different way would have opened it up to just as many problems. Your client had a heavy hill to climb in this case in the first place. It seems it seems challenging to say that this evidence, new evidence wouldn't also create additional problems. Your Honor, I think in normal cases, that is a valid point. But Mr. Freeman's case is different because first of all, the records were already there. Trial counsel introduced them state introduced them. Mr. Freeman, as you all know, his background was living in institutions his entire childhood. And so all of those records were there. What counsel had a duty to do was explain those records. And I'm wondering about that. Do you have any do you have any cases that say that even though all the evidence was already there, counsel aired either being probably a deficiency by not explaining those records in a particular way? I'm not familiar with the case that says that. Your Honor, there there's a case that this court has referenced about a record dump. And the case is holiday versus Hallie, which is a 2000 case. It's 209 F. Third, 1250 or 1243, excuse me, where they're distinguishing the counsel in that case from a counsel in Georgia, where a case out of Georgia, Turpin versus Lipan trial counsel's performance in the penalty phase was deficient because no reasonable lawyer would have based the penalty phase defense on giving 2500 pages of raw institutional documents to the jury and asking them to read through the stack of papers for mitigation evidence. What happened here? Or hadn't the jury just heard all of that evidence and testimony hours before in the in the guilt phase of the trial? The Your Honor, they did not hear all of that evidence because what defense counsel did was use the expert to put on an insanity defense. But then I wanted to talk to you about that, because you keep mentioning that, but you're really talking there about the guilt phase, right, as opposed to the penalty. And we're here on a COA, which is a penalty phase. But I'm sort of I'm sort of perplexed by that, because your your client didn't acknowledge doing it, the crime. So the guilt phase, then had to have some evidence. And the defense was an insanity defense. Correct? Yes, it was an insanity defense. So what would the defense have been then, if if if you wanted them to introduce evidence at the guilt phase of child abuse or sexual abuse? Well, Your Honor, let me make clear, I'm not suggesting that they should have introduced this evidence during the guilt phase. That is not at all what we're arguing. What we're arguing is that that Mr. Freeman's counsel as a capital defense attorney has a duty and obligation under clearly established federal law to put on evidence that would mitigate his clients life to humanize Mr. Freeman and to explain these records because right now, that's why I wanted to clarify that because it seemed to me that what you were suggesting was that the insanity defense was an improper defense and he and trial counsel should not have done that. That's why I wanted to clarify that. Yeah, we're not we're not here on an IAC of trial counsel during the guilt phase. And I apologize if I said something that made you think that I was arguing that what I was what I what I'm saying is that trial counsel put all of all of their efforts into this insanity defense to the detriment of the penalty phase. They left Mr. Freeman and Mr. Freeman's jury with no explanation for this heinous crime that was committed. The jury heard the state's prosecutor argue over and over again and use those records in a way that was so detrimental to Mr. Freeman, claiming he didn't get his way. He'll lose his temper. He was quiet until he was confronted to do something. But they didn't even use what they had and pull out the evidence, such as his history of responding to triggering events. There's multiple instances in the record where he would react when he was supposed to visit his his biological father and then learned that he couldn't because his father was ill or that his behavior happens when he couldn't see his family. These are things that the jury never heard. But I think one of the most important things that trial counsel completely missed in the record is evidence of sexual and physical abuse that was never explained to the jury. The jury only heard that this was a bad kid, that he was bad from the start, that he didn't get his way. He was lying, stealing. He was just a kid that deserved to be thrown away. Mr. Freeman. So I'm inclined to agree with you that this is the type of evidence that would enable you to establish prejudice in cases like Wiggins and Williams, but I'm concerned about EDPA deference. I think you argued that the district court did not apply deference, but in part, H2 of the district court's order, the court said that the ACCA's determination that his petition was pleaded with insufficient specificity was good at the deference. Am I wrong about that? So the district court looked at the claim that was presented in state court and had one paragraph that was not a detailed analysis, but saying that the claim as presented in state court is under D 2254 D would be reasonable. First of all, so you are aware, your honor, the argument regarding 2254 D was never briefed below because the state continued to argue this claim was procedurally defaulted. And so there was never any briefing below on 2254 D. If the argument is that 2254 D needs to be addressed and that Mr. Freeman needs to show how he can overcome the limitation on relief, I would respectfully ask that we be allowed to brief that issue because Mr. Freeman was responding to the state who, again, never contested the facts, but argued over and over again that this claim was defaulted. So 2254 D was never an issue. But even if we can show in briefing that the claim that was presented in state court, which was a claim where Mr. Freeman was not allowed to develop facts, he did not get any of the funding or investigative resources. He didn't even have a right. But I'm talking about the pleading. What the Alabama court found that the pleading was insufficient. And why is that not entitled to a deference, that ruling? Your Honor, that's not entitled to a deference because the court below. So again, this is a little bit procedurally complicated, but the trial level court found that Mr. Freeman had sufficiently pled his claims and moved forward and allowed Mr. Freeman to have an evidentiary hearing and then denied the claim on the merits. When the case went up on appeal, the state did not argue that the claims weren't sufficiently pleaded. They argued the merits. Mr. Freeman argued his case and included the errors from the state court below in not allowing him the opportunity to develop his claims, including even asking for money to bring lead trial counsel down to testify at an evidentiary hearing. He was denied that he didn't have the funds to do it himself. And so they attempted to introduce an affidavit a week before the evidentiary hearing, provided notice to the state. And that was not permitted to be considered as part of the record. That was an issue that was raised to the Court of Criminal Appeals. The Court of Criminal Appeals then on its own, without argument, said this claim lacks specificity. Mr. Freeman had no notice or that issue because they did that on his own. So we don't believe that deference should be owed in a situation where the state has changed the rules in the middle of the game. Federal courts sit obviously with great deference to state courts, and it's very unusual that federal courts will say a state court's decision and reasoning was unreasonable. But in this situation, Mr. Freeman can meet that high burden based on the proceedings that happened in the state court. All of that was briefed below in extensive detail before the district court. And again, was not addressed at all in the district court's opinion. And I just want to go back to you to make sure this court fully understands what trial counsel missed. Because it's one thing to say that trial counsel presented some evidence during the guilt phase in support of insanity. But what they missed was this sexual abuse in the record that signs that Mr. Freeman was placed at age five in a home where there were eight instances of red flags showing potential abuse in that home. Trial counsel did nothing to investigate and find out, well, what happened in that house? What was going on with these allegations of abuse? Counsel, may I ask you a question? I just want to confirm. My understanding is that at some point, your client was asked if he had been sexually abused, and he denied that. Yes, Mr. Freeman has denied that. And as we alleged below, that when Mr. Freeman was sexually abused at the group home for St. Mary's group home, when he was placed there between ages nine to 13, he was taken by a house mother who trial counsel never spoke with, and taken to the doctor because his rectum was bleeding. He had an examination, and the doctor are sexually abused to deny the abuse. And that was another error in judgment that the district court made because the district court said these witnesses, if you put on these witnesses about sexual abuse, they would have been attacked on cross-examination for not reporting this. Well, first of all, we said, and we alleged in our pleadings below that both of the witnesses that could have testified firsthand about sexual abuse did report it. One of them was the worker at St. Mary's who I mentioned, she reported it and nothing was done. And the other person was Mr. Freeman's little brother, who was at the group home in Missouri, where he was abused. He, his brother was abused too, and he reported it to his house mother, who then brought the kids back to Alabama. And that was all alleged below. The things that Mr. Freeman went through at the Smith household was that they neglected him so badly with regard to food, that they would get mad at him that he would steal food and his punishment was to starve him or make him eat until he gagged. He was punished to be in his room without access to water and he had to drink from the toilets. He was punched in the face with fists and belts and switches. And that doesn't even describe the sexual abuse that he was forced to perform oral sex on the of the indications of abuse in a household with lead counsel, if they actually read the records to say, we need to speak with witnesses, we need to investigate this information. Here, they did not do that. And so what the jury was left with, the sentencer was left with a one-sided story that this was a bad kid who lied, who stole. But what they could have heard was that this was a boy who went to a placement at age five, where adoption was a possibility. And instead of being adopted for the three years he was there, yes, he was stealing. He was stealing food. And they didn't hear that. They just heard that this was a bad kid from jump. And the duty of counsel under capital jurisprudence is to investigate, is to tell the story. The law is clear that the sentencer must have individualized information about the person that they are going to sentence to death. And so here, that did not happen. And we would ask there are, as your honors have asked throughout my argument, there are a lot of procedural complications in this case. But what is clear is that the district court denied his claim, ostensibly using a de novo review, saying his claim was completely meritless. We have shown through our briefing and through argument that this claim was not meritless, and it deserves to be proceed further. And we would ask this court to remand the case to the district court to allow further briefing on the procedural issues of the case and determine where the state stands now on procedural defaults. And the law has changed immensely since Mr. Freeman's briefing was completed in 2006. Thank you, counsel. You'll have your full five minutes for rebuttal. Counsel for the appellee. May it please the court. My name is Lauren Simpson and I represent the appellee in this matter. The district court correctly denied relief in two respects. First, the district court correctly determined that the state court's denial of post-conviction relief was not unreasonable under an AEDPA analysis. Freeman's state court pleadings were woefully insufficient. And the state courts correctly held that Freeman failed to adequately plead or prove his claims of penalty phase and effective assistance of counsel. Second, as for the 28 pages of new evidence presented to the district court that were not properly presented to the state courts, the district court conducted de novo review and he correctly denied relief. In this case, trial counsel put on a solid mitigation case. They just did so during the guilt phase because of the nature of the plea that Mr. Freeman entered. Most of the new evidence introduced at the district court was cumulative to the testimony and the almost 2000 pages of documentary evidence that went before the jury. As for the rest, the non-cumulative evidence, Mr. Freeman failed to allege specific facts and proper evidence showing that he ever communicated his alleged new evidence to his trial counsel about intellectual disability, sexual abuse, and neurological problems, or that there was any other evidence reasonably available to trial counsel in 1996. Let me ask you a question because I just want to confirm this. My understanding is that they're not challenging on appeal the intellectual disability, that determination. That is my understanding as well, Your Honor. I'm simply lumping in what the district court did in total in its analysis of this evidence. Thank you. Your Honor, the district court properly denied relief because he failed to find that there was any other evidence that was reasonably available to trial counsel in 1996 that would have alerted them to the possibility that further investigation would have produced useful evidence as to these topics. As the district court said, counsel is not required to be clairvoyant. Before turning to what the district court did, it's worth stepping back and reviewing what exactly trial counsel did in 1996. This was not a pure record dump on the jury. The trial counsel did not just sit back, give the jury 2000 pages of records, and say, go for it. Instead, they put on three solid guilt witnesses who offered mitigation evidence. The first was Marvin Hartley, who was one of the last child care workers who lived with Mr. Freeman at the Bell Road group home when he was an older adolescent. He said that Freeman was a loner, that he had outbursts when he didn't get his way, and that he craved love. The defense's theme in this case, in their words, was that Freeman was a throwaway child. Not that he was supposed to have been thrown away, but that he was a throwaway child, that no one had ever been there for him, that the state had abandoned their responsibility to raise this child who had no one else to raise him. After Mr. Hartley testified, Dr. Burkhart got up. Dr. Burkhart is unusual for a lot of these capital penalty phase experts or mitigation experts. Typically, in these cases, when a defendant comes up for capital murder, a psychologist is retained to look at him at the time of the events. Dr. Burkhart had prior knowledge of Mr. Freeman. He had seen Freeman in 1982 as a child, and then he evaluated him again in 1989 at the time of the first trial. Dr. Burkhart, in 89, gave him multiple assessments, the RAT, the MMPI, the Rorschach, various depression scales, and he reviewed the voluminous evidence, all of which was introduced into the evidence record and given to the jury. This includes his medical records, his mental health records, his DHR social records. Dr. Burkhart sort of hedged a bit in his diagnoses. He said that Freeman had major depressive disorder, and he diagnosed him with schizotypal personality disorder. However, and this goes to Dr. Renfro, who technically was the state's witness, that both Dr. Renfro and Dr. Burkhart said that borderline personality disorder did fit the facts of this case. Dr. Burkhart said that oftentimes psychological problems will go hand in hand, and that Freeman met seven of the diagnostic criteria for BPD. Only five are required to diagnose. BPD criteria can include a frantic effort to avoid real or abandoned imaginment, excuse me, abandonment. In this case, you have Freeman, who never knew his mother, who was abandoned repeatedly by his father, other family members, foster parents, and who was desperately trying to cling to some sort of a relationship, and that when Sylvia Gordon told him, I don't want to be your girlfriend, I just want to be your friend, this could have been the sort of triggering incident to trigger that abandonment, and then his rage. Dr. Burkhart also said that Freeman may have had a brief psychotic episode. That was his thought for insanity, that perhaps Freeman had had a psychotic episode. Freeman said that he had blacked out during the murders, and so Dr. Burkhart relied upon that. Aside from Dr. Burkhart, the defense also put on Yvonne Copeland, who had been one of Freeman's social workers at she had treated him for several years, but she was also able to talk about his case studies before and after her time at DHR. Counsel in particular pointed to certain parts of the DHR record, including Exhibit 6A, which is a sort of a brief summary of the many placements that Freeman had had. It came out during testimony, I believe, of Dr. Burkhart, that Freeman had been in 18 placements by the time he was nine years old. This was a child with very little stability in his life. Between Ms. Copeland and Dr. Burkhart, the jury heard a horrible testimony about Freeman's childhood, about the deprivations, about what he had suffered. Aside from just his many placements, they heard about his mother, who was transient, never in his life, abandoned him, was probably mentally disabled in some form, that she was unable to care for any of her children, showed up for one of her DHR reports in a bathrobe, a tiara, and no underwear. Clearly, he had no relationship with his mother, and he desperately wanted this maternal connection during his life. They also heard about his father, Edward, who was an elder, an older father, unable to care for any of his children emotionally, physically, fiscally. He had a painful facial tick, and he had severe depression. They heard about how Edward tried to take some of the all of them to the system. Mr. Freeman's counsel has emphasized some of the allegations of sexual abuse. What's your response to those particular allegations? As the district court said, Your Honor, Mr. Freeman never conveyed any of these allegations of sexual abuse to his trial counsel in 1996. As the Middle District pointed out in its order, its memo, page 193, footnote 185, there's voluminous instances of Mr. Freeman denying sexual abuse, denying sexual contact. Counsel are not required to be clairvoyant. If Mr. Freeman had knowledge that he had been sexually abused, touched improperly, anything along these lines, when he was in 1996, he was certainly an adult by that point, he could have conveyed this to trial counsel. He did not, and he can't just turn around years after the fact and claim that his counsel were ineffective for failing to present evidence of which he had knowledge, but he refused to convey to them. Other evidence that was before the jury was about Freeman's many placements, how he was shuttled from his own father to an aunt, to family, a stepfamily out in Missouri. Evidence of sexual, excuse me, the allegations of abuse out in Missouri were ultimately cleared by the people who investigated it. He was brought back to Alabama. He was shuttled to various foster homes, many of which had to return him either because they moved or because Freeman got violent with their own children or was uncontrollable. Freeman at the age of eight jumped on a freight train and rode 25 miles. He became increasingly erratic. He threatened self-harm, climbed on the roof of a building, threatened to hurt himself with a butcher knife. At one point, he and a testimony of these witnesses, in particular, Dr. Burkhart and Ms. Copeland, showed a pattern of Freeman living a life of deprivation, of living a life with very little stability. All of this powerful mitigation evidence, and it was powerful mitigation evidence, went before the jury during the guilt phase, but that wasn't the only evidence that went forward. The jury also had those 2,000 pages of records, in particular, the DHR records. Now, some in I said that the small summary, there was also a 116-page social history of the Freeman family in those DHR records that went to the jury that dealt with starting with his mother, Blonnie, and going up 30 years later to the time that Freeman aged out of the system. This is not a case in which the jury was not made aware of the many hardships of Freeman's life. This is not a case in which defense counsel said everything was just roses for this child, and he snapped. The defense's closing argument during the guilt phase really drove this point home. As I said earlier, defense counsel said that Freeman was a throwaway child. Counsel said, quote, if the state of Alabama had set out to create a mentally disturbed child, they couldn't have done a better job if they were trying. Counsel's theory of the case was that Freeman was as much a victim as anyone else, that while the things that he had done to Sylvia and Mary Gordon were horrible things, Freeman himself was a victim of the system, and he was not fully culpable for his actions. Now, granted, the penalty phase was less robust than the guilt phase because there was no sense in a trial counsel reiterating all of this evidence for the jury that had just heard it hours before. Both the prosecution and the defense moved all of their previous evidence in. Counsel again put on one more witness from the Mobile Boys Home to ask for leniency to say that Freeman had been a good boy and to ask for his life to be spared. And then counsel had said in their penalty phase closing argument that even though the jury had found him to be culpable, they could still find that some of these statutory mitigators, like extreme mental or emotional disturbance, were applicable at the With all that in mind, turning down to what the district court did. First, the district court correctly denied the relief as to the claims that were properly and fully presented to the state court below. The fourth amended Rule 32 petition, not the first, not the second, the fourth, contained sections 2G, 2J, and 2K, neurological impairment and penalty phase and effective assistance. In total, these sections were six sentences, wholly conclusory, no facts alleged. Under Alabama's post-conviction pleading scheme, Rule 32, if a petitioner must engage in full fact pleading, notice pleading is insufficient and it is grounds for summary dismissal. This barely constitutes notice pleading. But in this case, under Rules 32.3, 32.6B, and 32.7D, the circuit court should have summarily dismissed these claims. The court didn't do that. He gave Freeman a chance to put on evidence to support these allegations he'd made. And Freeman put on two of his trial lawyers. He failed to present evidence. And so the circuit court correctly denied his claims after this evidentiary hearing for failure to present evidence to support his allegations that counsel had failed to investigate, develop, and present unidentified mitigating evidence. When this got to the Court of Criminal Appeals, the Court of Criminal Appeals took one look at the pleadings below and said this should never have gone to an evidentiary hearing in the first place. The pleading was so insufficient that it should have been summarily dismissed. So either on the pleadings or based on his failure at the evidentiary hearing, the circuit, the state courts correctly denied relief. Under AEDPA, those were grounds, those were proper grounds for the district court to deny relief as well. Under a 2254-54 petition can only be granted unless adjudication of the claims below resulted in a decision contrary to or involving unreasonable application of clearly established federal law or a decision based on an unreasonable determination of the facts in light of the evidence presented. And that's simply not... What's your response to the suggestion that that particular question wasn't encompassed in our COA? Your Honor, I'm not certain about that. I do believe that the court has, that the district court was correct to deny relief under AEDPA, that the district court correctly looked at the facts below and said that the state court's determinations were reasonable based upon the insufficiency of the pleadings and the fact that he failed to present evidence. Again, AEDPA is a very difficult standard to meet. And so the district court in this case did not err by denying relief. Turning then to the 28 pages of new evidence that were presented during habeas. First of all, these allegations didn't even come up in the petition. They were brought out in a brief filed a year after the fact. The district court, excuse me, the state had argued that these claims should have been precluded because they were not fairly presented to the state courts below. The district court instead, as explained in his order denying relief on the Rule 59 e-motion filed at the memorandum opinion, the court declined to actually make findings as to preclusion, which would have then triggered a Martinez analysis. Instead, the court decided to review the claims de novo, which was the court's right to do under Burgess v. Tompkins from 2010. The middle district said that the problems in this new evidence that was presented were twofold. First, there were the fact that the record before the court refuted the substance of Freeman's claims under the clearly established law where AEDPA was applicable. And that his failure to allege any specific facts supporting his unexhausted or possibly procedurally defaulted claims was certainly an issue. He said that his claims were conclusory and that he failed to allege specific facts necessary for granting relief under the Strickland standard. The district court clearly went through Freeman's new allegations. He said that most of the new allegations were cumulative to what had been presented to the jury. The jury knew that Freeman had had a very difficult childhood, that he had not had the love and structure that a child should need, and that he had psychological problems. But then turning to the district court identified three areas in which Freeman's new evidence was not cumulative. Claims of intellectual disability, which again, I will not go into particularly here. Claims of sexual abuse and claims of a neurological disorder. As the neurological disorder, the court said Freeman never identified a neurological disorder with which he had been diagnosed prior to 1996 and to tell counsel about. As to sexual abuse, again, as the court noted in his memorandum opinion, footnote 185, the records do not mention sexual abuse. Freeman has denied sexual abuse consistently. And Freeman even told Dr. Burkhart, his own expert, later his expert, but in 1982, that he had never had The district court found that Freeman failed to establish deficient performance. Counsel are not required to be clairvoyant. If this information was within Mr. Freeman's purview, and he simply failed to tell counsel, he can't just sit back, twiddle his thumbs and say, well, counsel should have known, sorry, I didn't tell you. The court also correctly held that Freeman failed to establish prejudice. Counsel presented a strong mitigation case, as I have discussed today, about his unstable social history, his difficulty getting along with the rules, his emotional outbursts, his psychological problems, and his personality disorders. The district court independently reviewed the testimony and the evidence presented to the jury, and the court found no reasonable probability that Freeman's case would have gone in a different direction had this evidence been been presented. And at this point, it's worth considering what Freeman did in, compared to this evidence. The evidence showed that Freeman had a terrible childhood and deprivations, and that's not being contested today. But what Freeman did was he stabbed a 17-year-old girl 14 times. He stabbed her mother 22 times. And she, two of her wounds were fatal. He also raped her mother. Sylvia Gordon, 17 years old, he stabbed her, and not one of her wounds was a fatal wound. That child bled to death on the floor, and her crime was telling Freeman, I don't want to be your girlfriend. I just want to be your friend. Freeman cut the phone lines so the Gordon women couldn't call for help. He stole their car and drove off. He then went to work to try to establish an alibi, and then he claimed later, I don't know what happened. I stabbed Sylvia. Her mom came home. I had to stab her too, but I don't remember. I had some blackout episodes. This is heinous. And while Freeman's childhood was horrible, and while the defense counsel did a good job of putting before the jury just how bad his life had been, it did not negate what he did to this child and her mother, who did not deserve what happened to them. If the court has no further questions, I will end at this point and simply ask the court to affirm the judgment of the district court. I do have a question, Ms. Simpson. Are you still arguing that the new allegations of mitigating circumstances are unexhausted? Yes, Your Honor. I would argue that they are unexhausted below. They were not fairly... But exhaustion applies to claims, right? Not allegations or evidence. And it seems to me that they pertain to the same claim as the one Mr. Freeman brought in the fourth amended Rule 32 petition. Is that right? Yes, Your Honor. However, they were not fairly presented to the state courts to allow the state courts to have the first bite at the apple. For preclusion and exhaustion, the claim has to be fairly presented and fully presented to the state courts below. This evidence, if Freeman wanted these 28 pages of new allegations to be considered, should have been in that fourth amended Rule 32 petition. The circuit court should have had a chance to rule on it. The Alabama Court of Criminal Appeals and the Alabama Supreme Court should have had a chance to rule on it before it got to the state courts. Instead, what the state courts got was, depending on how many claims the court wants to consider, four to six sentences of highly preclusory allegations. Thank you. Thank you, Your Honor. So in essence, what you're claiming, though, is that they're procedurally defaulted? Yes, Your Honor. However, we would also say that if the court does not find them to be procedurally defaulted, the district court did not err by reviewing them de novo. The district court had that Mr. Freeman was not entitled to relief under a de novo review. Thank you. Thank you, Your Honor. Thank you, Your Honor. Ms. Simpson probably did a better job at explaining Mr. Freeman's background and history than his own counsel did during the penalty phase. Just a few points that I want to make. Ms. Simpson said that Mr. Freeman should have presented all of these facts in state court. And Mr. Freeman doesn't disagree with that. He attempted to. He did not have the resources and the funding as a poor prisoner sentenced to death in a state where counsel is not appointed in PCR. He had a pro bono attorney who did the best they could under the circumstances. And Martinez came out after full briefing in this district court. And Martinez makes clear that state courts have the option of either appointing counsel during a post-conviction proceeding in which the or not appointing counsel at all. But if no counsel is appointed and if there's a system in which there's no ability for somebody to have counsel to develop facts and have the resources necessary, then the then the state doesn't get the benefit of arguing procedural default. However, as Ms. Simpson noted, these claims, the claim is defaulted because he did not present the facts to state court. But there are reasons why. And that is the information that the district court skipped over that needs to be resolved before reaching the merits. And in this claim, Ms. Simpson also talked about all of the things that trial counsel presented in mitigation. Trial counsel introduced all 13 exhibits of childhood records over five pages of testimony in which he just asked the witness, is this the record? Is this the record? And without further explanation, that was volume 24 at page 59 of the habeas record. We don't contest the facts that trial counsel put on about Mr. Freeman having a lot of placements. We don't contest that. What we're arguing here today is that trial counsel completely abandoned the mitigation evidence necessary to tell Mr. Freeman's story. Opening argument during the penalty phase was nothing other than saying you can look at these five statutory mitigating circumstances. Trial counsel didn't even bother to argue the catch all mitigation, mitigation circumstance that any aspect of a defendant's character can and should be considered. The state in its closing argument focused on how the verdict of guilty has already determined that Mr. Freeman is responsible. The trial counsel focused on the same exact mitigating factor that they had already rejected at the guilt phase, unable to conform his conduct to the requirement of the law because he was substantially impaired. And defense counsel's point was, you can find these factors exist because they do. That was what was put forth in support of Mr. Freeman getting a life sentence instead of a death sentence. The mitigation here that has been uncovered and that trial counsel should have uncovered through all of the red flags showing abuse in the record would have helped understand even further the actions that happened, how Mr. Freeman ended up in the situation that he had been in. And this this crime is an awful crime and it has awful facts which just further underscores the need for defense counsel to present a mitigating story that's going to see, allow them to see their client as a human being and see the individual aspects of their client, not just simply that he was shuffled around from home to home and the state bringing out on cross-examination repeatedly that he was just a bad kid given multiple chances over and over again. No, they needed to hear about this sexual and physical abuse that started at age five and that led the trajectory of Mr. Freeman's entire life. And as the state makes clear, there are still procedural issues that need to be addressed. And we again respectfully request that this court remand, reverse the district court's decision because this claim clearly has merit and it was error for the court to decide otherwise below. Thank you to both counsel. You've very ably presented your arguments today and greatly assisted the court. Court is adjourned. Thank you. Thank you.